
EOD
09/05/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MARCUS RAY ECHART** | § | |
| xxx-xx-2039 | § | Case No. 05-60555 |
| **and DEBORAH LEA ECHART** | § | |
| xxx-xx-8375 | § | |
| 4416 VZCR 4301, Ben Wheeler, TX 75754 | § | |
| | § | Chapter 7 |
| Debtors | § | |
| MICHAEL J. McNALLY, | § | |
| Chapter 7 Trustee | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 06-6057 |
| | § | |
| MARCUS RAY ECHART and | § | |
| DEBORAH LEA ECHART | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OF DECISION

Now before the Court is the complaint of Michael J. McNally, Chapter 7 Trustee (the "Trustee"), seeking to revoke the discharge of the Defendant-Debtors, Marcus and Deborah Echart (the "Debtors"), pursuant to 11 U.S.C. §727(d)(2). Trial of the issues presented by the complaint was conducted on July 17, 2007. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

---

[1] This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (J), and (O).

## Background

The Debtors commenced the bankruptcy case underlying this adversary proceeding by filing a joint voluntary petition on March 16, 2005. The Trustee properly convened and concluded the initial meeting of creditors (contemplated by 11 U.S.C. §341) on April 18, 2005, at which time the Debtors had not yet prepared their 2004 federal income tax return. The Trustee advised the Debtors at the §341 meeting of their duty to provide a copy of the return to him upon filing and that, if the return should reflect any refund owing to the Debtors, such refund was owned by the bankruptcy estate. In supplementation of the directive given at the §341 meeting, the Trustee sent letters to the Debtors via their attorney in April, August, and October of 2005, inquiring about the status of the tax return. The tax return was also a subject of discussion at the Debtors' Rule 2004 examinations in July 2005. At that time, Deborah Echart acknowledged and unequivocally agreed to provide a copy of the return to the Trustee upon filing.

On or about October 15, 2005, the Debtors were notified by their accountant of the completion of the 2004 tax return — a return which documented the Debtors' entitlement to a refund of $17,050.00. The Debtors signed the return and submitted it to the IRS. But they did not notify the Trustee of the filing of the return as promised nor did they inform him of their receipt of the income tax refund on or about November 23, 2005. Notwithstanding the directives and warnings which had been issued to them, they endorsed the refund check and converted the funds to their own use.

After three extensions of the deadline to object to the Debtors' discharge, the Debtors received a discharge on January 28, 2006.[2] On February 16, 2006, the Trustee sent his fourth letter to the Debtors via counsel, requesting a status report on the 2004 tax return. By letter postmarked March 21, 2006, the Debtors provided a copy of their 2004 tax return to the Trustee. The Trustee immediately responded, inquiring whether the return had been filed and demanding the immediate turnover of the refund once received. On April 7, 2006, the Debtors' attorney notified the Trustee that the Debtors had received the $17,050 refund in November 2005 and had spent it.

In response to the Trustee's demands for restitution of the converted amounts, the Debtors began to investigate sources from which the converted sums could be repaid. Though Deborah Echart testified that, at the time they seized and spent the money in question, the Debtors believed that the converted sum could be repaid to the estate either through a refinancing of their homestead or through a partial liquidation of a retirement account, no restitution of the converted funds actually materialized until after the Trustee filed this adversary proceeding in August 2006, seeking to revoke the Debtors' discharge.

---

[2] The Trustee made three requests for extensions of the objection deadline, and cited specifically in his second request the Debtors' failure to provide their 2004 tax return for review. The Debtors contend that, because the Trustee was aware of the ongoing tax return issues, he should be estopped from seeking revocation of the discharge because of his failure to seek additional delay of the entry of the discharge order. This is akin to saying that, if you do not take affirmative actions to stop me from stealing, I should not be held responsible for my actions. Though in certain circumstances knowledge of particular facts by a trustee might shed light upon whether a debtor's actions were taken with the mental state required under the statute, no amount of inactivity by the Chapter 7 Trustee could relieve the Debtors in this case of their affirmative duties to disclose and to surrender their bankruptcy estate property to the Trustee pursuant to 11 U.S.C. §521(a)(4) nor absolutely protect them from the consequences of their actions under §727.

In October 2006 — one year after learning of their entitlement to the refund and eleven months after they appropriated it — the Debtors tendered the principal sum of $17,050.00 to the Trustee in an effort to forestall the attack on their discharge. The Debtors attribute the delay in making restitution to their inability to access the equity in their home (because of a cloud on the title) and their limited access to the retirement funds (because of finite withdrawal windows in the retirement plan).

## Discussion

The Trustee brings this adversary complaint under 11 U.S.C. §727(d)(2), which provides:

> (d) On request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if–
> . . .
>     (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; . . .

11 U.S.C. §727(d)(2). The Trustee bears the burden to "establish that the Debtors acquired or became entitled to acquire property of the estate, *and* knowingly and fraudulently failed to report or deliver the property to the trustee." *Holder v. Bennett (In re Bennett)*, 126 B.R. 869, 873 (Bankr. N.D. Tex. 1991). The Debtors do not dispute that

the tax refund in question in this case constituted property of the bankruptcy estate which they both became entitled to receive, and actually received in the fall of 2005. Hence, the only issue the Trustee must prove is that the Debtors knowingly and fraudulently failed to report, or knowingly and fraudulently failed to deliver, the income tax refund. Sufficient proof by a preponderance of the evidence in either regard constitutes cause to revoke the Debtors' discharge.

Proving a knowing and fraudulent intent is not a simple matter, for rare will be the debtor who provides direct evidence of his fraudulent intent. Instead, fraudulent intent is most often found by relying on inferences drawn from a course of conduct. *First Texas Svgs. Ass'n v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1983) [finding that a debtor's whole pattern of conduct evinces his fraudulent intent]; *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992) ["The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct. Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances."].

The Debtors' course of conduct in this case clearly evidences a knowing and fraudulent intent in their admitted failure to report their entitlement to the tax refund to the Trustee, their failure to report the actual acquisition of that tax refund to the Trustee, and their failure to deliver the tax refund to the Trustee.[3] Both of the Debtors were

---

[3] *See, e.g., Hill v. Muniz (In re Muniz)*, 320 B.R. 697 (Bankr. D. Col. 2005), in which the United States Bankruptcy Court for the District of Colorado, when facing a remarkably similar factual scenario to the case at bar observed as follows:
  [T]he evidence does amply demonstrate that Debtor received and failed to turn over state

admittedly aware of their responsibility to provide the Trustee a copy of their income tax return, as well as their obligation to turn over any refund that might arise therefrom. Both Debtors admitted in interrogatories that they became aware of the substantial refund due upon receiving their completed return from their accountant on or about October 15, 2005. Yet at that point, and for the next five months (until the Trustee inquired yet again), they purposefully concealed their entitlement to, and receipt of, an asset which they <u>knew</u> was property of the bankruptcy estate.[4] That action alone compromised their right to a discharge. They then compounded the problem by actually converting the estate's property to their own use. They knew of their duties under the Code, but they knowingly and fraudulently chose a different course of action.

A Chapter 7 debtor's exercise of dominion and control over, and indeed a subsequent conversion of, an estate asset to the exclusion of the bankruptcy estate can be neither countenanced nor disregarded. *See, e.g.*, *Browning Mfg. v. Mims ( In re Coastal*

---

and federal income tax returns in the total amount of $1,618.00. Debtor had no entitlement whatever to do anything with those funds other than turn them over to the Trustee. Those funds never belonged to the Debtor. They were, quite simply, property of the bankruptcy estate in which the Debtor had no rights at all. Yet, she used those funds for her own purposes. Under § 727(d)(2), a knowing and fraudulent misappropriation of estate property establishes the Trustee's right to obtain an order providing for revocation of the Debtor's discharge.

*Muniz*, 320 B.R. at 701.

[4] The Court specifically rejects the Debtors' contention that they genuinely believed that they might be entitled to a portion of the refund. Even if true, they did not appropriate only a portion — they took it all. Further, even if Ms. Echart testified truthfully that they immediately began to investigate sources of repayment, it only demonstrates that they knew that they were not entitled to the money in the first place.

*Plains, Inc.),* 179 F.3d 197, 207-08 (5th Cir. 1999) ["It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets. . . . Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized."] Nor can the statutory penalties for such conduct be avoided by simply making a subsequent restitution of the converted amount after litigation to revoke the discharge is commenced. Otherwise, an invidious incentive for fraud is created. Why should a bankruptcy debtor deal openly and honestly with the bankruptcy system and its trustee if any risk attendant to fraudulent behavior can be easily neutralized merely by returning or replacing the converted asset if the wrongful behavior is discovered? The integrity of the bankruptcy system cannot rest upon such a spurious proposition. Contrary to the position of the Debtors in this case, the concept of "no harm, no foul" simply has no application in this context. A Chapter 7 debtor's right to obtain a discharge is absolutely and unconditionally dependent upon an honest and complete disclosure of all assets and the tendering of all non-exempt assets to the trustee for administration. As is often stated, the prompt and unconditional fulfillment of that duty is the *quid pro quo* for the protections offered by an order of discharge and any refusal by a debtor to fulfill those obligations, when taken with the requisite mental state, must trigger a corresponding deprivation of that remedy for which bankruptcy relief is sought. *See, e.g.*, *Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 699 (Bankr. D. Col. 2005) ["Those persons who seek the

extraordinary relief of a bankruptcy discharge may not ignore their legal obligations to the court and the trustee and still expect to receive a discharge of debt."].

Such a conclusion is neither precluded nor avoided by any willingness on the part of the Debtors to invade otherwise exempt assets in order to repay the amounts which had been purloined from the estate. Just as a thief would not be exonerated by his ability or willingness to make restitution of stolen bank notes upon discovery, these Debtors cannot escape the consequences of their intentional decision to appropriate and convert estate assets to which they knew they were not entitled. *See, e.g.*, *Olsen v. Reese (In re Reese)*, 203 B.R. 425 (Bankr. N.D. Ill.1997) in which a trustee was also forced to resort to legal remedies to recover a tax refund for an estate and in which the court observed that:

> The Debtors' actions, however, cannot be considered cooperative. Cooperation would have been the voluntary disclosure of the tax refund, the immediate turnover of the requested information and the immediate turnover of the income tax refund. . . . Here, the Debtors' actions were not cooperative, but instead amounted to a knowing and fraudulent failure to report to the Trustee the entitlement to or the acquisition of property of the estate. *The eventual turnover of the funds does not cure the original fraud.* The Debtors' deposit of the income tax refund . . . reveals a knowing and fraudulent failure to deliver the income tax refund to the Trustee.

*Reese*, 203 B.R. at 431-32 (emphasis added).

Finally, the Debtors are convinced that they would not be facing the revocation of their discharge if they had been financially capable of making a full, immediate

repayment of the converted refund. That speculative proposition can hold no solace for them nor offer any reprieve from the consequences of their actions. The Debtors' limited access to significant amounts of cash, rather than constituting an extenuating circumstance, was instead the very circumstance which enticed them to convert the tax refund. They knew exactly what they were doing. They felt a pressing need for money, they knew that they could not immediately access cash from their exempt holdings, and they suddenly found themselves in possession of a substantial cash asset, though it did not belong to them.[5] They decided to utilize that estate property and assumed that, if their misappropriation was discovered, they could simply reconcile their obligations to the trustee at a later time which would be more convenient for them while still avoiding any negative repercussions. That assumption proved false and the consequence of that knowing and fraudulent decision is the revocation of the Debtors' discharge.

Accordingly, the Court concludes that the Debtors' discharge should be revoked pursuant to 11 U.S.C. §727(d)(2). This memorandum of decision constitutes the Court's findings of fact and conclusions of law[6] pursuant to Fed. R. Civ. P. 52, as incorporated

---

[5] One might speculate that, if the Debtors had timely advised the Trustee that their tax return had been filed, reflecting an entitlement to the $17,050 refund (as the Trustee had repeatedly advised them to do), the temptation to convert the refund upon receipt might have been averted. However, the fact that the Debtors continued to conceal even the filing of the return for a number of months reveals the premeditated nature of the fraud in which the Debtors intended to engage.

[6] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate judgment will be entered which is consistent with this opinion.

Signed on 09/05/2007

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE